[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
This is a motor vehicle negligence case in which the plaintiff Karen Tonelli claimed personal injuries resulted from the defendant Joseph Ruggiero's negligent operation of a motor vehicle which struck her on September 2, 1991 while she walked on Roosevelt Drive, Derby. Prior to trial the defendant filed for personal bankruptcy and was adjudicated bankrupt and discharged from personal responsibility for his debts including this claim. After trial, on October 1, 1996, the jury returned a general verdict for the plaintiff in the net amount of $320,000, after assessing 20% contributory negligence on her part in causing her own injuries. The defendant now seeks to set aside the verdict based on the cumulative effect of the plaintiff's counsel's misconduct in: (1) offering evidence about the financial distress of the plaintiff; (2) introducing the subject of insurance; and (3) creating the impression that the defendant had been convicted of numerous felonies when in fact he had no felony convictions. The defendant also claims the verdict should be set aside because it is contrary to the weight of the evidence.
This court earlier refused to take action on any further post verdict motions in the case, either to enter judgment on the verdict or to set it aside until the plaintiff received relief CT Page 13280 from the U.S. Bankruptcy Court to proceed.
This Court declined to act because although the plaintiff's counsel had allowed the impression to be created in a chambers conference prior to the trial that the U.S. Bankruptcy Court for the District of Connecticut had granted relief permitting the case to proceed, in fact the Bankruptcy Court had not been petitioned and had therefore taken no action. The Bankruptcy Court had issued a broad injunction upon the defendant's discharge from the claims against the defendant providing in pertinent part as to all claimants, including the plaintiff, that:
 "All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void . . . are enjoined from instituting or continuing any action . . ."
After this Court's refusal to act on post verdict motions, the plaintiff then petitioned the Bankruptcy Court for relief. Although entitled "Order of Abstention", the Bankruptcy Court by subsequent order of August 28, 1997 and pursuant to 11 U.S.C. § 105
(a) has now left "the determination of any post verdict motions and whether to enter judgment on the verdict in the State Court proceeding to the Superior Court, Judicial District of Ansonia/Milford . . ." retaining jurisdiction in the Bankruptcy Court, after that is done to consider further proceedings, if necessary, as to adversary issues raised by the parties in the Bankruptcy Court.
In light of the August 28, 1997 order, this court now acts to deny the motion to set aside the verdict and grant the motion to enter judgment on the verdict, with interest and costs in accordance with this memorandum.
The defendant's motion to dismiss on jurisdictional grounds is also denied.
The court will first address this motion to dismiss for lack of jurisdiction. Despite the injunction it earlier issued, the U.S. Bankruptcy Court has made it clear in its August 28, 1997 ruling that this court may proceed to hear and determine post verdict motions. The Bankruptcy Court has determined that any bankruptcy issues will be determined in the U.S. Bankruptcy Court for the District of Connecticut where an adversary proceeding CT Page 13281 between the parties is pending. The Superior Court has jurisdiction to hear the matter before it pursuant to Article First, Section 10 of the Constitution of the State of Connecticut and Section 51-645 of the General Statutes. There is no longer a substantial question of impediment to further proceedings in this tribunal by virtue of the post discharges Bankruptcy Court injunction, and the motion to dismiss is therefore denied.
The court will now turn to discussion of plaintiff's testimony claiming financial inability as the cause for delay in seeking further orthopedic treatment.
The plaintiff's counsel questioned the plaintiff about her failure to seek immediate treatment and change of treating orthopedic surgeons. This elicited answers from the plaintiff that the reason for both the failure to seek immediate medical treatment and to continue treatment with the same physician, Dr. Nolan, resulted from her inability to afford the fees Dr. Nolan demanded before performing the surgery. There was a rational relevant purpose behind offer of this evidence since the plaintiff experienced a substantial hiatus between injury and the ultimate corrective surgery, and this testimony explained both the delay and the change of doctors to the jury. The court does not find any injustice done by virtue of the offer of that evidence to which the defendant did not object.
The court will next turn to the defendant's injection of insurance into the case.
The defendant also objects that insurance was interjected into the proceeding when the plaintiff's counsel asked the defendant if he had discussed his testimony prior to making it with a man who was in the back of the courtroom. The plaintiff elicited an answer in response that he had done so with that man and the defendant then volunteered the information that he was his "insurance man". The defendant responded to the plaintiff by giving more information than had been asked for in the question. However, in the court's opinion, that does not form grounds for setting aside the verdict.
The court charged the jury as follows:
 "The subject of insurance was introduced in this case when Mr. Ruggiero was asked if he had . . . discussed his testimony prior to making it CT Page 13282 and responded in the negative. You should decide the issues in the case based solely on the merits of the case as you determine from the evidence and law as it is explained to you by the Judge. Your verdict should not be influenced in any way by speculation about the existence or non existence of insurance. The law does not permit insurance considerations to enter in any way into your decision as to what this verdict should be. To decide whether a case has been proved in accordance with all the requirements of law, look to the evidence with due regard to the law as it is explained to you by the Judge and look to it fairly as to each individual who is party to this case."
The Court believes this sufficed to deal with the problem of the defendant volunteering information that he had insurance. The court will now turn to the "conviction of felony" questions asked by the plaintiff's counsel.
The plaintiff's counsel asked the defendant whether he had been convicted of felonies. He denied that. When shown a sheaf of papers not in evidence by the plaintiff's attorney and asked questions from it, the defendant indicated he had arrests for bad checks which he did not know anything about. The defense counsel did not object to these questions, but through subsequent examination of his own witness brought out that eighteen years earlier he did have problems with arrests for bad checks after his wife had withdrawn monies from a joint checking account as a result of marital discord. He explained that this caused the defendant's previously issued checks to be drawn against insufficient funds when presented by the payees. When examined by his own attorney, Mr. Ruggiero adequately explained the prior misdemeanor arrests as the fallout from a marital split up where the former wife drained cash from an account upon separation causing checks which he had previously written to bounce. The sheaf of papers the plaintiff's counsel had used was marked for identification only.
After all sides had rested, the defense counsel found that in fact there was actually no record of felony convictions on the sheaf of papers marked for identification and that Ruggiero had correctly denied commission of any felonies on the witness stand. CT Page 13283
At the commencement of its charge the court gave the following curative instruction:
 "THE COURT: Let me begin my instruction with one important caution to you. Mr. Ruggiero was asked about prior conviction of a felony. You have no evidence before you from which you could infer that he was convicted of a felony and you should therefore remove that issue from your considerations in assessing credibility or determining your verdict. Evidence of misdemeanor offenses also is irrelevant to your considerations here and should be entirely disregarded."
No objection was interposed to this line of inquiry about felonies during trial by the defendant. The mistake by plaintiff's counsel was understandable, because although larceny in the third degree in violation of section 53a-174 has been a class D felony since 1981, at the time of Mr. Ruggiero's conviction in 1978, it was only a misdemeanor. While retaining the name Larceny in the third degree, Public Act 82-271 amended Section 53a-124 transforming it from the petty larceny misdemeanor statute where the value of the goods stolen had to be $50.00 or less to a new Class D felony statute where the value of the property stolen exceeds $1000.00. The plaintiff's counsel's conduct was mistaken, not intentional. The defendant argues that even if it were only a mistake, it tainted the proceeding so that the verdict should be set aside. The Court disagrees.
The court's charge was curative and the court therefore does not believe any lasting injustice was done by the questions plaintiff's counsel asked the defendant about his conviction record, although the plaintiff's examination into this subject was maladroit.
The court finds no grounds to set aside the verdict either individually or by virtue of the cumulative effect of: (1) the evidence of the plaintiff's financial inability to continue treatment with Dr. Nolan or; (2) by questions to the defendant about with whom he previously discussed his testimony or by virtue of; (3) the questions concerning whether the defendant had a felony record. The plaintiff's financial circumstances explained her delay in seeking recommended remedial medical treatment a reasonable person might have otherwise sought earlier. The defendant's unsolicited statement that the person in the back of the courtroom was his insurance man did not respond CT Page 13284 to a question from the plaintiff's counsel and the court charged the jury to decide the case on the merits, not based on speculation about existence of insurance. Finally, the questions as to felony convictions were answered by the defendant in the negative and the court charged out of the jury's consideration any consideration of felonies or misdemeanors in weighing the defendant's credibility or deciding their verdict.
The defendant also argues that the verdict should be set aside because it was against the weight of the evidence. The jury could have reasonably found that: (1) the plaintiff's injuries were serious; (2) economic damages were substantial — $54,383.98 alone having been expended for medical treatment; (3) permanent injury had been sustained; (4) the defendant could have in the exercise of due care avoided hitting her as had another driver who preceded the defendant down the same road by only a few seconds. The court will not set aside the verdict based on weight of the evidence because the jury could have reasonably found as it did.
The plaintiff also seeks interest of $242,134. She had filed an offer of Judgment of $50,000.00 with the Clerk on May 15, 1992 within eighteen months of the filing of the complaint on February 10, 1992. The defendant maintains that if judgment enters, interest should be imposed on the judgment for only that period of time running from February 18, 1992, the return date, to June 22, 1992, the date of the filing of bankruptcy. The reason for this is that the defendant maintains that the automatic stay of all proceedings provided by federal bankruptcy law should stop running of interest.
The offer of judgment statute provides that where an offer of judgment was not accepted by the defendant, as was the situation in this case, interest runs from the "date the complaint was filed to the date of judgment." It is clear from the August 28, 1997 order that Judge Schiff has permitted and left this action to proceed pursuant to 11 U.S.C. § 1334 (c) (1) and 11 U.S.C. § 105
(a) "without consideration of the effect of Bankruptcy law on said judgment if any" and that he has retained "jurisdiction to consider in further proceedings, if necessary, any issues raised" in the adversary proceeding before him. This court will therefore not determine the question of the effect of bankruptcy on interest but proceed to decide the case without further consideration of the bankruptcy law. CT Page 13285
Because the plaintiff's offer of judgment was never accepted and the jury verdict exceeded the offer, pursuant to Section 52-192a of the General Statutes the court finds that the plaintiff is entitled to interest of 12% from the February 10, 1992 date the complaint was filed with the clerk. The court calculates this interest from the date the case was filed with the Clerk to the date of this judgment at $224,000.
Costs in the amount of $2492.43 are allowed to the plaintiff in this matter.
The Clerk is directed to enter judgment in favor of the plaintiff and against the defendant in the amount of:
 $320,000 verdict $224,000 interest 2492.43 costs $546,492.43 TOTAL JUDGMENT
FLYNN, J.